## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA ex rel.
JOSEPH SEIKEL and TERENCE SEIKEL,

      Plaintiffs/Relators,

v.

DAVID B. ALVAREZ; APPLIED
CONSTRUCTION SOLUTIONS, INC.;
ENERGY TRANSPORTATION, LLC;
ENERGY RESOURCE GROUP, LLC;
ET360, LLC; BEAR CONTRACTING, LLC;
BEAR UTILITIES, LLC; JASON P.
HENDERSON; and JOHN DOES NOS. 1-50,
FICTITIOUS NAMES;

      Defendants.

No. 2:20-cv-05286-ER

### ALVAREZ DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
### MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)

### Introduction

Relators Joseph Seikel and Terence Seikel reveal themselves to this Court as mere "residents of Michigan," Compl. ¶ 22. For purposes of the venue of this action, however, Relators are owners and members of Octane Environmental, LLC, an Ohio corporation with its principal office in Bridgeport, West Virginia. Kipnis Decl. ¶ 4, Ex. A.

As a *qui tam* matter, the Alvarez Defendants concede for purposes of this motion that personal jurisdiction and venue reside in this district by virtue of the "national contacts" test. *See Pinker v. Roche Holdings Ltd.*, 292 F.3d 361 (3d Cir. 2002) (noting contacts to the "United States" are sufficient to establish personal jurisdiction and venue in a *qui tam* matter). For the "convenience of the parties and witnesses" and in the "interest of justice," however, this Court should transfer this matter to the United States District Court for the Northern District of West

Virginia, Clarksburg Division, for a resolution of the merits of Relators' claims. 28 U.S.C.

§ 1404(a).

The Third Circuit has set forth a number of public and private interest factors that district courts should consider in determining whether transfer is appropriate. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d. Cir. 1995). Each of these factors range from neutral to overwhelmingly in support of transfer of this case to the Northern District of West Virginia. Defendants predominantly conduct their material business in the Northern District of West Virginia, and none of the allegations of fraud flow from activities taken in the Eastern District of Pennsylvania.

On the contrary, every conceivable aspect of this case touches the Northern District of West Virginia:

- the allegations of fraud arose from activities in the Northern District of West Virginia;

- all the individual named Defendants reside and work in West Virginia;

- all the corporate Defendants are headquartered in the Northern District of West Virginia;

- each of the potential witnesses resides and works in the Northern District of West Virginia far outside the trial subpoena power of this Court; and

- each of the relevant documents was generated and is housed in West Virginia.

*See* Sections B(2), B(4), and C(6) *infra* ; Alvarez Decl. ¶¶ 2, 7-15.

For the reasons stated herein, the Alvarez Defendants' motion should be granted, and this matter should be transferred to the United States District Court for the Northern District of West Virginia because it is clear that conducting these procedures in the Northern District of West Virginia will be best for the "convenience of the parties and witnesses" and in the "interest of

justice".[1] Further, this Court should not reward the Relators' blatant forum shopping by continuing to allow the matter to remain pending in this District. *See Askan,* 2021 WL 7630530, *1 n.1.

### Factual Background

Defendant David B. Alvarez ("Mr. Alvarez") is a citizen of West Virginia who has resided in Northern West Virginia for his entire life. Alvarez Decl. ¶ 2. Co-Defendant Energy Transportation, LLC, which is owned by Mr. Alvarez, is headquartered in Bridgeport, West Virginia. *Id.* ¶ 4. Co-Defendant Applied Construction Solutions, Inc. also has its principal place of business in Bridgeport, West Virginia. *Id.* ¶¶ 7-8. Accordingly, all documents pertaining to these two entities are located in Bridgeport, West Virginia as well, and all employees of Energy Transportation, LLC and Applied Construction Solutions, Inc. alike reside and work in the Northern District of West Virginia and, particularly, in the Clarksburg division. *Id.* ¶ 9-10.

On April 3, 2020, Energy Transportation, LLC applied for its PPP loan through United Bank's West Virginia offices. *Id.* ¶ 12. Applied Construction Solutions, Inc., also, applied for its PPP loan through United Bank's West Virginia offices on that same day. *Id.* ¶ 14. Both Energy Transportation, LLC, and Applied Construction Solutions, Inc. relied on a West Virginia Certified Public Accountant to prepare their respective PPP applications. *Id.* ¶¶ 13, 15.

As such, all potential witnesses—including the banks, bankers, accountants, and employees—who were most directly involved in or connected to the allegedly fraudulent PPP loans that are the subject of this *qui tam* action are located in West Virginia. The businesses operate from West Virginia, they conduct business primarily in West Virginia, and they used

---

[1] For reasons unknown, Relators have chosen not to serve their Complaint. Thus, the Alvarez Defendants are making a special appearance for purposes of this transfer motion.

financial institutions and professionals in the Northern District of West Virginia. The relevant documents that gave rise to Relators' allegations of fraud were generated and are currently housed in West Virginia.

In addition to the Alvarez Defendants, the other Defendants named in this action have their principal place of business in the neighboring cities of either Bridgeport or Clarksburg, West Virginia, a fact of which Relators are fully aware given that they explicitly pled all named Defendants in this action are West Virginia residents. Compl. ¶¶ 26, 28, 31, 33, 35-36.

While Relators are not residents of West Virginia, neither are they residents of Pennsylvania; they identify themselves as "residents of Michigan" in their Complaint. *Id.* ¶ 22. They do, however, have strong connections to the Northern District of West Virginia. Relators are members of Octane Environmental, LLC, which is an Ohio corporation with its principal office is located in Bridgeport, West Virginia. Kipnis Decl. ¶ 3, Ex. A. Relators necessarily travel to West Virginia often to operate their business. They also currently travel to West Virginia for another reason: they are involved in another ongoing litigation in the Northern District of West Virginia, *Richards v. Octane Envtl., LLC*, No. 1:18-CV-158 (the "Octane Litigation"). Relators' business is named as a Defendant in the lawsuit, and both Relators are named as Defendants in their individual capacities as well.

Notably, Relators have already sought to compel Defendant Energy Resource Group, LLC to produce competitive and sensitive data in response to a non-party subpoena in the Octane Litigation. Kipnis Decl. ¶ 6, Exhibit C. Although the court in that matter issued an order quashing the non-party subpoena, it still permitted Relators (who are Defendants in the Octane Litigation) to depose Mr. Alvarez, who was not a party to that suit. *Id.* ¶¶ 7-8, Exs. D-E. The court, while permitting Relators to depose Mr. Alvarez on a matter pertinent to the Octane

Litigation, explicitly found that "any information regarding Applied Construction Solutions … a direct competitor of Octane and managed and/or directed by Mr. Alvarez, is irrelevant to this case." *Id.* ¶ 8, Ex. E. The court continued to also remind Relators that the order granting Energy Resource Group, LLC's Motion to Quash subpoena remains in effect. *Id.* In that October 27, 2020, deposition, at which both Relators were physically present, Mr. Alvarez provided testimony that is directly at odds with Relators' allegations of his ownership and affiliation with Energy Resource Group, LLC. *Id.* ¶ 9, Exhibit F pgs. 10, 16-18, 24, 42. Even though both Relators have knowledge as physical witnesses of this testimony, they did not amend their Complaint or otherwise correct the record before this matter was unsealed and their erroneous allegations were made public.

Not only do Defendants and Relators alike have significant connections to the Northern District of West Virginia, but critically, neither Defendants nor Relators have any substantial connections to the Eastern District of Pennsylvania. Furthermore, all the operative facts that gave rise to Relators' allegations of fraud take root in West Virginia, not in the Eastern District of Pennsylvania or in the Commonwealth of Pennsylvania at all. The only direct connection to this District is the United States' investigation through the Department of Justice's Philadelphia office. However, the United States has chosen not to intervene at this time, cutting off that sole connection to this District. ECF No. 23.

## Legal Standard

In considering a motion to transfer venue, a court must accept as true the allegations in the Complaint, but it may consider contradictory evidence in the form of "affidavits or other appropriate evidence." *Andrade v. Chase Home Fin.*, *LLC*, No. 04 C 8229, 2005 WL 3436400, at *2 (N.D. Ill. Dec. 12, 2005) ("When deciding a motion to transfer venue, the court must accept

as true all of plaintiff's well-pleaded facts in the complaint, *unless they are contradicted by affidavits or other appropriate evidence from the defendant* (emphasis added).")[2] Likewise, a court can consider appropriate supporting evidence such as "documents, affidavits, or statements concerning the availability of material witnesses, relative ease of access to evidence, and business or personal hardships that might result for the moving parties." *Fellner v. Philadelphia Toboggan Coasters, Inc.*, No. Civ.A.05-2052, 2005 WL 2660351, *4 (E.D. Pa. Oct. 18, 2005).

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The purpose of transferring venue under § 1404(a) "is to prevent the waste of time, energy, and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). When making its determination on a motion to transfer venue, "the district court is vested with wide discretion." *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973).

The Third Circuit considers various public and private interest factors when determining whether to transfer a civil action to another venue under Section 1404(a), elaborating beyond the bare text of the statute and including other interests that have been addressed by courts and commentators. *See Jumara*, 55 F.3d at 879-80. The public interest factors include (1) "the enforceability of the judgment"; (2) "practical considerations that could make the trial easy, expeditious, or inexpensive"; (3) "the relative administrative difficulty in the two fora resulting from court congestion"; (4) "the local interest in deciding local controversies at home"; (5) "the public policies of the fora"; and (6) "the familiarity of the trial judge with the applicable state

---

[2] *See Hollander v. Hospira, Inc.*, No. 2:10-CV-00235-JD, 2010 WL 4751669, *1 n.1.

law in diversity cases." *Id*. The private interest factors include (1) the "plaintiff's forum preference as manifested in the original choice," (2) "the defendant's preference" of forum; (3) "whether the claim arose elsewhere"; (4) "the convenience of the parties as indicated by their relative physical and financial condition"; (5) "the convenience of witnesses–but only to the extent that the witnesses may actually be unavailable for trial in one of the fora"; and (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id*. at 879.

Although the burden of establishing that "a balancing of proper interests weigh[s] in favor of the transfer" rests on the movant, this is a relatively light burden. *In re United States*, 273 F.3d 380, 388 (3d Cir. 2001) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)). A movant is "not required to show truly compelling circumstances . . . . It is enough if, all relevant things considered, the case would be better off transferred to another district." *Id*. (citations omitted).

## Argument

The mere fact that a particular venue is a possible host for a cause of action does not guarantee that it is the most suitable venue for "the just, speedy, and inexpensive determination" of the matter. Fed. R. Civ. P. 1. Such is the reality in this *qui tam* action, where venue can be established in any venue in the nation because of the lenient jurisdictional bar set by the "national contacts" test. The Northern District of West Virginia is the most appropriate jurisdiction to resolve this matter in an efficient manner, as the center of gravity of the alleged events with the easiest access to the named Defendants, witnesses, and physical evidence; the greatest personal interest in the resolution of a matter centered around individuals, businesses,

and events occurring within its boundaries; and the most convenient district for all involved, from Relators to Defendants to counsel.

**A.      Venue is clearly proper in the Northern District of West Virginia.**

Much as Relators may be eager to point to 31 U.S.C. § 3732(a) as establishing venue in the Eastern District of Pennsylvania, this statute also supports venue as proper in the Northern District of West Virginia. "Any action under section 3730 may be brought in any judicial district in which … any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred." 31 U.S.C. § 3732(a). Relators explicitly pled that all named Defendants in this action are West Virginia residents. Compl. ¶¶ 25-26, 28, 31, 33, 35-37; *see also* 28 U.S.C. § 1391(c) (explaining that a natural person is deemed to "reside" in the judicial district where domiciled and a defendant entity is deemed to "reside" in any judicial district where it is subject to personal jurisdiction). The named individual Defendants are residents of West Virginia. Compl. ¶¶ 25, 37. Each business entity named as a Defendant has its principal place of business in the neighboring cities of either Bridgeport or Clarksburg, West Virginia. *Id.* ¶¶ 26, 28, 31, 33, 35-36. While section 3732(a) only requires *any one defendant* to be found in a judicial district where a *qui tam* plaintiff wishes to file suit, in the instant case, *all* named Defendants reside in the Northern District of West Virginia.

Aside from the Northern District of West Virginia meeting venue requirements under 31 U.S.C. § 3732(a), it could also be a proper venue were this case not a *qui tam* action. The named Defendants all reside in West Virginia, and all the actions giving rise to allegations of fraud occurred within the confines of the Northern District of West Virginia. Conversely, the Relators can only rely upon the more relaxed venue provisions of section 3732(a) to support any tenuous claim that venue is appropriate in the Eastern District of Pennsylvania. Were this a non-*qui tam*

matter, it would be impossible for them to establish minimum contacts for purposes of personal jurisdiction in this district. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945).

Not only is the Northern District of West Virginia a permissible venue, but a more appropriate one given the connections that both the Relators and the named individual and corporate Defendants have to that forum. Relators, despite being "residents of Michigan," have strong connections to the Northern District of West Virginia, because although Octane Environmental, LLC, is an Ohio corporation, its principal office is located in Bridgeport, West Virginia. Relators make no allegations and set forth no facts to establish the Eastern District of Pennsylvania as a more suitable venue for the case or based on their own ties to the jurisdiction.

**B.    The Third Circuit's public interest factors weigh heavily in favor of transfer to the Northern District of West Virginia.**

In *Jumara*, the Third Circuit set out the relevant and applicable public interest factors for courts to consider when ruling on section 1404(a) motions to transfer venue, elaborating upon the three specifically enumerated in the rule. 55 F.3d at 879-80.

**1.    The judgment is equally enforceable in either jurisdiction.**

A judgment from the Northern District of West Virginia would be just as enforceable as one from the Eastern District of Pennsylvania. *See E'Cal Corp. v. Office Max, Inc.*, No. 01-cv-3281, 2001 WL 1167534, at *4 (E.D. Pa. Sept. 7, 2001) ("[U]nlike enforcing a judgment in a foreign country, where both fora[] are federal district courts, this factor is less consequential because there is little significant difference in enforcing a judgment in one federal forum than another."). Neither jurisdiction has any reason to be less capable of administering a valid judgment, nor does any reason exist to question the validity of any judgment that may be made. Therefore, this factor is neutral in determining whether this action should be transferred.

**2.    The Northern District of West Virginia is a more practical jurisdiction to litigate this action, making the action less burdensome on all parties.**

Conducting the trial for this matter in the Northern District of West Virginia would be unquestionably easier, quicker, and less expensive for all parties. As noted in Section A *supra*, all named individual Defendants work and reside in the Northern District of West Virginia. Moreover, nearly all the likely witnesses live or work in the Northern District of West Virginia and fall within that court's subpoena power. Thus, travel expenses would be significantly reduced if they were summoned to court in their home forum, rather than a court in another state. Additionally, Relators already are required to travel to West Virginia to operate the Octane business. Traveling to the Eastern District of Pennsylvania from Clarksburg, West Virginia is no simple task: no direct flights travel between Clarksburg and Philadelphia, and to circumvent the need for a flight with a layover, traveling by car from Clarksburg to Philadelphia takes roughly six hours (~350 miles). Therefore, Defendants and Relators alike would benefit from transferring this matter to the Northern District of West Virginia because it is indisputably more convenient for the parties.

In addition to concerns about travel costs and overall efficiency, many, if not all, of the witnesses and relevant documents are in the Northern District of West Virginia. Under Rule 45, a witness may only be subpoenaed to appear for trial "within 100 miles of where the person resides, is employed, or regularly transacts business in person[.]" Fed. R. Civ. P. 45(c)(1)(A). Since the Defendant entities at issue are located in West Virginia and largely transact business in West Virginia, any relevant conduct would also have occurred in West Virginia. Further, any potential witnesses would likely work for these West Virginia entities, and therefore likely reside in West Virginia. The 100-mile radius would be sufficient to subpoena such witnesses to court in the Northern District of West Virginia, but not to the Eastern District of Pennsylvania, given that

Clarksburg, West Virginia is nearly 350 miles to the west of Philadelphia. As such, effective resolution of this action would not only be more difficult in the current jurisdiction, but downright hindered without the ability to subpoena witnesses to trial. *See also Tshudy v. Pennsylvania State Univ.*, No. 22-3336, 2022 WL 4225612 at \*4 ("The practical considerations of trial factor weigh in favor of transfer; many, if not all, of the witnesses and relevant documents are likely in the [transferee district].") For the purposes of prosecuting and trying this case, and to ensure that justice is served, this factor weighs overwhelmingly in favor of transfer of this case to the Northern District of West Virginia.

### 3. The Northern District of West Virginia has a compelling local interest in deciding local controversies.

Since all named Defendants reside in West Virginia, all Defendant entities reside in the Northern District of West Virginia, and most of the operative facts underlying Relators' claims allegedly occurred in the Northern District of West Virginia, that court has a greater interest in hearing and deciding this case. *See Wellpath, LLC v. Evanston Ins. Co.*, No. 20-4885, 2021 WL 3885146 at \*6 (E.D. Pa. Aug. 30, 2021); *see also Johnson v. Equifax Info. Servs., LLC*, No. 17-1066, 2017 WL 2779568 at \*6 (E.D. Pa. June 27, 2017) ("Courts have a local interest in having local controversies decided at home.") (citations omitted). Particularly, because the Defendant entities are in West Virginia, nearly all the potential witnesses and relevant documents related to Defendants also reside in West Virginia. Their policies and procedures are thus also established and maintained in West Virginia, which gives the State of West Virginia a particular interest in ensuring that the businesses and residents under its jurisdiction are obeying both local and national laws. *See, e.g., Bombardiere v. Schlumberger Tech. Corp.*, No. 1:11-CV-50, 2011 WL 2443691 at \*6 (N.D. W.Va. June 14, 2011) (denying a motion to transfer to the Western District of Pennsylvania where "a West Virginia resident[] was severely injured while performing work

11

for an employe[r] which regularly solicits residents of West Virginia for employment"); *Parker v. United Fin. Cas. Co.*, No. 5:17-CV-104, 2017 WL 3611754 at *4 (N.D. W.Va. Aug. 22, 2017) (denying motion to transfer to the Southern District of Ohio where the policy at issue was handled at a claims office in West Virginia, and the medical records came from West Virginia hospitals).

This factor strongly weighs in favor of transferring this action to the Northern District of West Virginia, because all the allegations of the underlying controversy center on events and individuals local to that district. The Northern District of West Virginia has a heavy interest in adjudicating this matter in its efforts to protect the jurisdiction and its residents from malfeasance.

4.     **The public policies of the fora bear little relevance in a federal-question case.**

Public policy is a factor that has little weight in this analysis, and so it should be considered neutral. Given that the claims arise under the False Claims Act, which is national in scope and concerns the federal government, neither forum can be said to have a particularly powerful policy that would tip the scales in its favor. *See U.S. ex rel. Hollander v. MTD Products, Inc.*, No. 09-5507, 2011 WL 3501749 at *4 (E.D. Pa. Aug. 9, 2011) (holding that public policy had little weight when the underlying claim "is an activity of national interest" and the court was "aware of no public policy or interest that would favor one forum over the other").

5.     **No particular state law is relevant in this case brought under federal question jurisdiction.**

The final public interest factor named in *Jumara*, "the familiarity of the trial judge with the applicable state law in diversity cases," is irrelevant in a federal question case and has no application in this matter. 55 F.3d at 879-80.

C.     **The Third Circuit's private interest factors weigh heavily in favor of transfer to the Northern District of West Virginia.**

The Third Circuit in *Jumara* also set out several private interest factors for courts to consider when ruling on section 1404(a) motions to transfer venue, with some variance past the specific factors named in the rule. 55 F.3d at 879.

1.     **The plaintiff's forum preference should receive little, if any, deference.**

In a *qui tam* case, the "plaintiff's forum preference" is a private interest factor that receives minimal deference. *See Jumara*, 55 F.3d at 879 (naming the private interest factors). The United States is the real party in interest and therefore the "plaintiff," but it has chosen not to intervene which further erodes the basis for venue in this district. *See* 31 U.S.C. § 3730(b)(1) ("The action shall be brought in the name of the Government."). In a *qui tam* case, the Relators' choice of forum is given little weight. *See U.S. ex rel. Hollander*, No. 09-5507, 2011 WL 3501749 at *2; *see also U.S., ex rel. Penizotto v. Bates East Corp.*, No. CIV.A. 94-3626, 1996 WL 417172 at *2 (E.D. Pa. July 18, 1996) ("Courts have stated further that because the United States is the real plaintiff in qui tam actions, the relator's choice of forum is entitled to relatively little weight."). Here, the United States has chosen not to intervene at this time. ECF 23.

Even if this were not a *qui tam* lawsuit, any deference to a plaintiff's choice of forum is further "reduced . . . where few operative facts occurred in plaintiff's selected forum or where plaintiff does not reside in that forum." *Penizotto*, 1996 WL 417172 at *2; *see also Timothy Fisher v. Consol. Rail Corp.*, No. CIV.A. 95-7692, 1996 WL 72576 at *1 (E.D. Pa. Feb. 20, 1996) ("[T]he plaintiff's choice is accorded less deference where, as here, the plaintiff does not reside in the forum chosen and no operative facts occurred in the forum[.]"). The Relators bringing this case reside in Michigan, and their business is an Ohio corporation with its principal place of business in West Virginia. Therefore, neither the Relators nor their business reside in

Pennsylvania. *See* 28 U.S.C. § 1391(c) (defining "residence" for individuals and corporations). In fact, they have more connections to West Virginia. Additionally, as noted in Sections B(2) and B(4) *supra*, all the material facts relating to this matter—including those that spurred the allegations of fraud—occurred in West Virginia.

For the aforementioned reasons, Relators' choice of venue deserves no deference because none of the operative facts occurred in the Eastern District of Pennsylvania.

**2.      Defendants' forum preference neutralizes any minimal weight that Relators' forum preference would carry.**

Traditionally, Defendants' forum preference would be "entitled to considerably less weight than Plaintiff's, as the purpose of a venue transfer is not to shift inconvenience from one party to another." *EVCO Tech. & Dev. Co., LLC v. Precision Shooting Equip., Inc.*, 379 F.Supp.2d 728, 730 (E.D. Pa. 2005). However, this court has found that when a plaintiff's forum preference is a *trivial influence*, that factor may be neutralized by a defendant's preference for a different venue. *See, e.g., Medina v. Haas*, No. 20-5019, 2021 WL 1088343 at *3 (E.D. Pa. Mar. 22, 2021) (holding that where the plaintiff lived outside of his chosen forum and the defendant's actions were not tied to that forum, "this factor is neutralized by Defendants' preference[.]"). *See also Jackson v. Brightwell*, No. 20-5500, 2021 WL 780238 at *2 (E.D. Pa. Mar. 1, 2021) (holding that where the plaintiff lived in a different state and none of the "conduct complained of" occurred in her chosen forum, and the Defendants' preferred forum was where the incident took place, "these factors cancel each other out."). It would be a stretch to say this district has even a *trivial* influence in this matter, as this case has no connection whatsoever to the Eastern District of Pennsylvania.

In the instant case, "none of the litigants have a connection" to the Eastern District of Pennsylvania. *Jackson*, 2021 WL 780238 at *2. As such, Defendants' desire to transfer this case

"does not shift inconvenience because no party resides in the Eastern District, let alone Pennsylvania." *Id.*

### 3. The alleged facts underlying Relators' claim arose in West Virginia.

The Eastern District has repeatedly noted that "[w]hen the vast majority of the acts giving rise to plaintiff's claims take place in another forum, that weighs heavily in favor of transfer." *Alers v. Pennsylvania Higher Educ. Assistance Agency*, No. 20-2073, 2022 WL 3722085 at *4 (E.D. Pa. Aug. 29, 2022) (quoting *Hamilton v. Nochimson*, No. CIV.A. 09-CV-2196, 2009 WL 2195138 at *3 (E.D. Pa. July 21, 2009)). In the instant case, the Defendants operate and manage their business and filed their PPP applications in West Virginia. Furthermore, all the bank accounts, bank managers, and professional accountants who helped prepare the applications are in West Virginia. Relators do not allege that any of the underlying actions of their claims occurred in the Eastern District of Pennsylvania, or otherwise provide any information or allegations to suggest a majority of the operative facts took place outside of West Virginia. Accordingly, the fact that the alleged claims arose not in the Eastern District of Pennsylvania, but rather in West Virginia, weighs strongly in favor of transfer. *See Tshudy*, 2022 WL 4225612 at *3 (holding that the factor of whether the claim arose elsewhere weighed strongly in favor of transfer where none of the underlying actions occurred in the Eastern District of Pennsylvania); *see also Martin v. McHugh*, No. 14-3729, 2014 WL 5801412 at *4 (E.D. Pa. Nov. 7, 2014) (granting motion to transfer where "none of the events underlying" plaintiff's claim occurred in the Eastern District of Pennsylvania).

A test that has been adopted by some district courts in the Third Circuit to determine "where the claim arose" is known as the "center of gravity analysis." *See Ethicon, Inc. v. Randall*, No. 3:20-cv-13524, 2021 WL 2206106 at *12 (D.N.J. May 28, 2021) (citations

omitted). "The center of gravity analysis is a fact sensitive inquiry that seeks to identify the forum in which the operative facts giving rise to the litigation occurred." *Allied Old English, Inc. v. Uwajimaya, Inc.*, No. 11-1239, 2012 WL 3564172 at *4 (D.N.J. Aug. 16, 2012) (quoting *Travelodge Hotels, Inc. v. Perry Developers, Inc.*, No.11–1464, 2011 WL 5869602, at *5 (D.N.J. Nov. 22, 2011)). This test appears to stem from the words of the Supreme Court of the United States in *Van Cauwenberghe v. Biard*: "To evaluate these [public interest] factors, the court must consider the locus of the alleged culpable conduct . . . and the connection of that conduct to the plaintiff's chosen forum." 486 U.S. 517, 528 (1988). The center of gravity in this matter clearly rests in West Virginia.

As addressed earlier in this section, Defendants operate their businesses and filed their allegedly false PPP applications in West Virginia. The bank accounts, bank managers, bank extending the PPP loans, accountants, and any other individuals involved with either crafting or filing the PPP applications are in West Virginia as well. The operative facts relevant to this matter are deeply rooted in West Virginia, not in the Eastern District of Pennsylvania or in the Commonwealth of Pennsylvania at all. The "locus" of the conduct and the great weight of the facts that would be the center of gravity are in the Northern District of West Virginia.

### 4. The Northern District of West Virginia would be more convenient for all parties, as indicated by their relative physical and financial condition.

Transfer to the Northern District of West Virginia would be more convenient for all parties, from both geographic and financial considerations. As noted in Sections A and B(2) *supra*, all named Defendants—individuals and entities—reside in West Virginia. Relators not only acknowledged this fact, but also directly pled each of the named Defendants as residents of West Virginia in their Complaint. Compl. ¶¶ 25-26, 28, 31, 33, 35-37. Although none of the parties have made any claims as to financial hardship, travel time and costs would be

16

significantly less for Defendants if they were called to defend this action in the Northern District of West Virginia, instead of going to another forum in another state.

Relators would also benefit from litigating this case in the Northern District of West Virginia in lieu of the Eastern District of Pennsylvania. In addition to the instant litigation, Relators also must contend with the Octane Litigation taking place in the Northern District of West Virginia. Relators are self-proclaimed residents of Michigan, not Pennsylvania. Compl. ¶ 22. Therefore, they already need to travel to the Northern District of West Virginia to litigate that matter.

In the overall interest in convenience and mitigating the burdens of litigation, this factor weighs heavily in favor of transfer. *See Medina*, 2021 WL 1088343 at *4 ("Whereas the Eastern District is not particularly convenient for any party, the [transferee district] is convenient for most.").

### 5. Most witnesses, if not all of them, would be unavailable to appear for trial in the Eastern District of Pennsylvania.

Most, if not all, of Defendants' witnesses are in West Virginia. *See* Section B(2) *supra*. While that not only makes it inconvenient to access enough witnesses who can travel to the Eastern District of Pennsylvania to provide testimony for the case, it also prevents this Court from issuing subpoenas to those witnesses. Rule 45 provides that a witness may only be subpoenaed to appear for trial "within 100 miles of where the person resides, is employed, or regularly transacts business in person[.]" Fed. R. Civ. P. 45(c)(1)(A). The 100-mile radius is broad enough to subpoena witnesses to court in the Northern District of West Virginia, where nearly all the witnesses reside and work, but not to the Eastern District of Pennsylvania.

"The convenience of witnesses is especially significant 'to the extent that the witnesses may actually be unavailable for trial in one of the fora.'" *Hollander*, 2010 WL 4751669, *4

(quoting *Jumara*, 55 F.3d at 879); *see also Consol. Risk Servs., Inc. v. Auto. Dealers WC Self Ins. Trust*, No. 05-6827, 2006 WL 1737471, at *4 (E.D. Pa. June 21, 2006) (concluding that defendants' representation that witnesses were beyond subpoena power of court was factor weighing in favor of transfer). The following presumptive witnesses live and work within the Northern District of West Virginia's subpoena power compared to hundreds of miles beyond this district's trial subpoena power:

| Name | Anticipated Knowledge | Location |
|---|---|---|
| Ms. Tammy Keough | Ms. Keough is an Energy Transportation employee and is anticipated to have knowledge concerning Energy Transportation's PPP Loan. | Ms. Keough works in Bridgeport, WV. |
| Ms. Patricia Clark | Ms. Clark is a CPA and prepared Alvarez Defendant's PPP loans and tax returns | Ms. Clark works in Charleston, WV |
| Ms. Brittany Poth-Lesmann | Ms. Poth-Lesmann is an Applied Construction Solutions employee and is anticipated to have knowledge concerning Applied Construction Solutions' PPP Loan. | Ms. Poth-Lesmann works in Bridgeport, WV. |
| Ms. Andria Wymer | Ms. Wymer is an employee of Alvarez Defendants and assisted with their respective PPP loans. | Ms. Wymer works in Bridgeport, WV. |
| Mr. Patrick Bryan | Mr. Bryan is a bank manager at United Bank which processed Alvarez Defendant's PPP loans | Mr. Bryan works in Parkersburg, WV. |
| Mr. Russ Francis | Mr. Francis is the accountant for Defendant ET360 and assisted with its PPP loan | Mr. Francis works in Bridgeport, WV |
| Mr. Jeff Alastanos | Mr. Alastanos is Defendant Jason Henderson's accountant and has knowledge of the Mr. Henderson's entity ownership | Mr. Alastanos works in Clarksburg, WV |

| Name | Anticipated Knowledge | Location |
|---|---|---|
| Mr. Brad Ritchie | Mr. Ritchie works at Summit Bank and has knowledge of Mr. Alvarez' bank accounts. | Mr. Ritchie works in Charleston, WV |

*See* Alvarez Decl. ¶ 18.

As demonstrated above, this factor weighs overwhelmingly in favor of transfer to the Northern District of West Virginia, as the only court with subpoena power over most—if not all—of the likely trial witnesses in this matter.

**6.     The location of books and records is mostly, but not entirely, a neutral factor.**

Regarding the final private factor, the location of books and records and their general availability, "[a] court may consider the location of books and records, but only 'to the extent that the files could not be produced in the alternative forum.'" *Alers*, 2022 WL 3722085 at *5 (quoting *Jumara*, 55 F.3d at 879). In the instant case, much of the relevant documentation is ESI and therefore accessible from any location. Nevertheless, all these documents were created, generated, or otherwise have their origins in West Virginia. Thus, this factor is largely neutral in any transfer analysis.

## Conclusion

This matter not only could have, but should have, been filed in the Northern District of West Virginia, given that it has no relation to Pennsylvania, let alone the Eastern District of Pennsylvania. Under the Third Circuit's *Jumara* factors addressing a motion to transfer venue, every factor is either neutral or weighs in favor of transfer. Critically, all the allegations relate to actions that arose in West Virginia, nearly all of Defendants' witnesses live and work in West Virginia, every named Defendant is a resident of West Virginia, Relators are not residents of Pennsylvania, and Relators' competitor company has its principal office in the Northern District of West Virginia. Wherefore, the Alvarez Defendants respectfully request an Order granting their

19

motion to transfer and directing the Clerk's Office to transfer this case to the United States

District Court for the Northern District of West Virginia, Clarksburg Division.

Dated:  November 9, 2022

DAVID B. ALVAREZ; APPLIED
CONSTRUCTION SOLUTIONS, INC.; AND
ENERGY TRANSPORTATION, LLC

By Counsel

_____
Patricia M. Kipnis (PA Bar # 91470)
Bailey & Glasser LLP
1622 Locust Street
Philadelphia, PA 19103
Telephone:     215.274.9420
Facsimile:      202.463.2103
Email:  pkipnis@baileyglasser.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 9th day of November, 2022, a copy of the foregoing was electronically filed and served through the Court's CM/ECF system on counsel of record listed below:

William G. Powers, Esq.
Andrew M. Miller
BARON & BUDD, P.C.
The Watergate, 10th Floor
600 New Hampshire Ave., NW
Washington, DC 20037
wpowers@baronbudd.com
amiller@baronbudd.com

_____
Patricia M. Kipnis (PA Bar # 91470)